NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2493-23

LEONOR ALCANTARA,
individually and as guardian
ad litem for E.A., LESLIE
JOHNSON, individually and as
guardian ad litem for D.J., JUANA
PEREZ, individually and as
guardian ad litem for Y.P.,
TATIANA ESCOBAR, and IRA
SCHULMAN, individually
and as guardian ad litem for A.S.,

 Petitioners-Appellants,

and

HENRY MORO, individually
and as guardian ad litem for A.S.,

 Petitioner,

v.

ANGELICA ALLEN-MCMILLAN,
ACTING COMMISSIONER OF
THE NEW JERSEY DEPARTMENT
OF EDUCATION, NEW JERSEY
STATE BOARD OF EDUCATION,
and NEW JERSEY DEPARTMENT
OF EDUCATION,

 Respondents-Respondents.

_____

> **APPROVED FOR PUBLICATION**
> **September 8, 2025**
> **APPELLATE DIVISION**

Argued April 8, 2025 – Decided September 8, 2025

Before Judges Smith, Chase, and Vanek.

On appeal from the New Jersey Department of Education.

Paul L. Tractenberg argued the cause for appellants (Paul L. Tractenberg, and Arthur H. Lang, attorneys; Paul L. Tractenberg, and Arthur H. Lang, on the briefs).

Christopher Weber, Deputy Attorney General, argued the cause for respondents (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Ryan J. Silver, Deputy Attorney General, and Christopher Weber, on the brief).

The opinion of the court was delivered by

SMITH, J.A.D.

Petitioners, parents of children enrolled in the Lakewood Public School District (Lakewood, or District), appeal from the acting New Jersey Commissioner of Education's[1] (Commissioner) April 1, 2024 final decision

---

[1] Pursuant to N.J.S.A. 18A:4-24, acting Commissioner Kevin Dehmer delegated the responsibility to issue the April 1, 2024 final decision to Cary Booker, the Assistant Commissioner of the Division of Early Childhood Services. For ease of reference, we refer to Assistant Commissioner Cary Booker as "the Commissioner" throughout this opinion.

that the School Funding Reform Act[2] (SFRA) was constitutional as applied to Lakewood. See N.J. Const. art. VIII, § 4, ¶ 1.

While we have concerns about the ongoing constitutional deprivation suffered by the public school students of Lakewood, we affirm the Commissioner's final administrative decision because we conclude the SFRA is constitutional as applied to Lakewood and that the Commissioner fully complied with our directive in Alcantara v. Allen-McMillan (Alcantara I), 475 N.J. Super. 58 (App. Div. 2023).

I.

As background, we recount relevant facts concerning the District from Judge Mary Whipple's opinion in Alcantara I.

> The record demonstrates Lakewood's school district is in a unique and precarious position. This is due, in large part, to demographic trends in the area. Lakewood Township has seen a population rise in recent decades, due in large part to a thriving Orthodox Jewish community. As a result of this demographic shift, the township has approximately 37,000 school-aged children, however, only about 6,000 are enrolled in the secular public schools.[*] The majority—84%—are enrolled in private religious schools . . .

—————————

—————————

[2] N.J.S.A. 18A:7F-43 to -70.

A-2493-23

[*] Demographically, 8.1% of the District's students are Black and 86% are Latino. The entire student body is eligible for free or reduced-price lunches based on household income. The District has a high percentage of students who speak English as a second language.

_____

As a result, Lakewood is an outlier amongst other New Jersey school districts, in which most of the students are enrolled in public schools. The non-public school students in Lakewood alone constitute nearly a quarter of all such students in our state.

Like other districts, Lakewood's state-issued school aid is calculated based upon its 6,000 enrolled public school students. However, Lakewood's education budget has been severely strained by its obligation to provide transportation and special education tuition to many of the 31,000 non-public school students not included in its aid calculation. The record developed before the ALJ is extensive, but the key takeaway is this: the total budget for the most recent school year at the time of that decision was $143.45 million. Of that, over half—$78 million—went to transportation and special education tuition for non-public students. This is an abnormal and unsustainable imbalance. By way of comparison, in neighboring districts, the costs of transportation and special needs tuition accounted for roughly four to seven percent of their annual education budgets.

. . . Lakewood had difficulty hiring and retaining teachers and other instructional aides. Classroom instructional salaries were the second lowest in the state on a per-pupil basis. A preschool program, which had been recommended in a 2009 needs assessment, was never implemented.

Student performance was also depressed. Test scores from 2014-15 indicated that only twenty-three percent of high school students met or exceeded expectations on the PARCC assessment for English, whereas only five percent met that threshold in math. Only six percent of district students scored above 1550 on the SAT, compared to forty-three percent of students statewide, placing Lakewood in the thirteenth percentile of all districts.

[Alcantara I, 475 N.J. Super. at 62-63.]

On July 24, 2014, parents of children enrolled in the District filed a petition of appeal with the Commissioner, alleging that Lakewood failed to provide public school students with a thorough and efficient education (T&E) as required by the New Jersey Constitution, due to insufficient SFRA funding. Petitioners sought a declaration from the Commissioner that:

[A]ll of Lakewood's students are entitled to the same services to which students similarly situated elsewhere in New Jersey are entitled, and to foreclose the possibility of a remedy that disparately impacts the children of Lakewood or that forces them to forego their rights and privileges under the current law.

The Commissioner transmitted the claim to the Office of Administrative Law (OAL) in 2014.

On May 1, 2021, an Administrative Law Judge (ALJ) issued an initial decision. The ALJ determined that, while "Lakewood's students [were] not receiving a thorough and efficient education as required by the New Jersey Constitution, . . . the SFRA [was] not unconstitutional as applied to Lakewood

because the lack of T&E in Lakewood [was] not due, in significant part, to the SFRA." Rather, it was Lakewood's fiscal mismanagement, failure to raise taxes, lack of a comprehensive preschool program, and transportation and special education spending issues—coupled with the Legislature's annual Appropriation Acts—that led to Lakewood not providing T&E. In the initial decision, the ALJ recommended that the Commissioner conduct an additional needs assessment of Lakewood.

The Commissioner issued a final administrative decision (FAD) on July 16, 2021, rejecting the ALJ's finding that Lakewood was not providing T&E. We summarized the FAD this way:

> In determining Lakewood's students were receiving a constitutionally adequate education, the Commissioner made essentially three arguments. First, she asserted there was a positive trend of improvement in the school's testing averages. Second, while acknowledging cuts to various educational programs at the district, she observed the District still offered "all the courses required for graduation[,]" as well as five AP classes, music programs, and research skills courses. Third, while she acknowledged a "high rate of teacher turnover" and a high student-teacher ratio, she claimed Lakewood met various federal targets under the ESSA (with exceptions).
>
> As legal support for her conclusion, she compared the above observations with the conditions described in Abbott II, a case concerning stark physical deficiencies in school facilities—students being taught in coal bins, eating lunch in the corridor, and using bathrooms without hot water. 119 N.J. at

363, 575. In the Commissioner's estimation, because Lakewood lacked these desperate conditions, the quality of education it provided remained constitutionally sound.

[Alcantara I, 475 N.J. Super. at 67-68.]

While the Commissioner accepted the ALJ's finding that the SFRA was constitutional as applied to Lakewood, they did not reach the issue in the FAD "because [appellants] failed to meet the threshold inquiry of establishing Lakewood's failure to provide T&E." However, the Commissioner "directed [the DOE] to conduct a comprehensive review of the District's organization, structure and policies to assess its compliance with the quality performance indicators in accordance with N.J.S.A. 18A:7A-11 to determine how the District can improve its educational program."

On petitioners' appeal from the FAD, we held that the Commissioner's decision to reject the ALJ's T&E findings was not supported by the record. Id. at 67 (citing Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014)) (internal quotation marks omitted) ("[A]n agency's determination cannot be sustained if it lacks fair support in the record."). We reversed and remanded, instructing the Commissioner:

[T]o consider the substantive arguments pertaining to the SFRA in light of our Supreme Court's directive in Abbott ex rel. Abbott v. Burke (Abbott XX), 199 N.J. 140, 146 (2009): the State has a continuing obligation to "keep SFRA operating at its optimal level . . . " and

"[t]here should be no doubt that we would require remediation of any deficiencies of a constitutional dimension, if such problems do emerge."

[Id. at 71.]

Next, the Commissioner directed the DOE to expedite the comprehensive review they ordered in the July 16, 2021 FAD, noting that the record before us in Alcantara I was outdated and finding a more current record would assist the Commissioner on remand in "identifying the root causes that led to the educational deprivations identified by the Appellate Division."

The Commissioner retained Dr. Kimberly Markus, an education consultant and former Commissioner of Education, and Public Consulting Group LLC, a management consulting firm, to conduct the review. The review's purpose was to:

> [E]xamine the Lakewood School District's operations and performance in several key areas, including educational policy, special education, administration and governance, and accounting. In addition to these areas, the review will include, but will not be limited to, an examination of the particular areas of concern raised by [appellants] in these proceedings, such as transportation costs for the Lakewood School District's students and special education funding.

The DOE produced its report, titled "Comprehensive Review of the Lakewood Public School District" (CR), along with a supplemental exhibit titled "Lakewood Public School District Review[,]" on March 1, 2024.

On April 1, 2024, the Commissioner issued a final decision finding that "Lakewood's failure to provide T&E to its students d[i]d not derive, in significant part, from the provisions of the SFRA." The Commissioner determined that the lack of T&E was caused by "Lakewood's tax-related choices that decreased revenue, the significant deficiencies in Lakewood's spending practices, and Lakewood's failure to control its transportation and special education costs."

The Commissioner's FAD consisted of three causal theories leading to the students' constitutional deprivation in the LPSD: the impact of other funding legislation combined with Lakewood's failure to raise local school tax revenue; fiscal mismanagement; and extraordinary transportation and special education costs.

Concerning the District's power to raise revenue through local school taxes, the Commissioner found that "Lakewood's decision to not maintain adequate local fair share contributed to the [D]istrict's current fiscal problems." The Commissioner also found that "Lakewood's school-tax rate was below the state average and below other districts." The Commissioner further found that the SFRA was not the only school funding mechanism established by the Legislature that affected District finances, identifying

legislation capping the District's tax levy (N.J.S.A. 18A:7F-38) and the Legislature's annual Appropriations Act.

The Commissioner then determined that the record "demonstrate[d] severe deficiencies in Lakewood's fiscal management, including its failure to keep track of expenditures, records, and data and questionable spending practices." The Commissioner supported this finding with the testimony of an Office of Legislative Services auditor who "found financial transactions that were not consistent with government auditing standards, a lack of control environment leading to a lack of stability, lax reconciliation procedures, a lack of supporting documentation, Board approval of contracts without review, and other questionable expenses." Additionally, the Commissioner noted a lack of "[a]ttention to administrative and financial detail" by District management. The Commissioner also reported "significant data discrepancy and reporting issues[,]" failures to "approv[e] vendors before payment[,]" the failure of the District to provide many nonpublic students with a student identification number, and poorly organized and administered public bidding processes and procedures. The Commissioner ultimately found that Lakewood's fiscal mismanagement led to its "inefficient use of funds."

Turning to transportation and special education costs, the Commissioner initially found that "Lakewood [did] not take[] reasonable steps to control its

special education and transportation costs despite receiving advice to do so" from a 2009 needs assessment and a 2014 audit.

Regarding transportation costs, the Commissioner identified issues such as Lakewood's courtesy busing policy,[3] its use of gendered buses and tiering bell times, and its failure to increase route sharing or stagger school schedules. As for the administration of transportation services, the Commissioner found: "there [was] not sufficient separation between Lakewood as a contracting agency and the Lakewood Student Transportation Authority (LSTA) as a vendor"; full time employees worked for both Lakewood and the LSTA; the District chose not to take opportunities to bid tiered routes rather than individual routes; buses were running "four to eight routes a day" and "being used on multiple routes"; and some students were billed for busing at higher costs when "transported by the District rather than the LSTA." Acknowledging Lakewood's higher nonpublic school transportation costs, the Commissioner ultimately found that funding from the State, coupled with increases to the local tax levy, would be sufficient to provide T&E to Lakewood students.

---

[3] The record shows that courtesy busing in the District operated to provide bus transportation for non-public school students that did not live remotely from their schools. Having engaged in the practice for several years, Lakewood stopped providing courtesy busing in 2016.

A-2493-23

Regarding special education costs, the Commissioner found that Lakewood failed to utilize the cost-saving strategies for special education that the DOE's 2009 needs assessment recommended.  The Commissioner also found Lakewood could apply for "additional aid[] based on an unusually high rate of low-incidence disabilities."  The Commissioner also found the District fell short in its efforts to educate Lakewood special education children in-house.  The Commissioner found that instructing such children in-house would save the District money and perhaps make it eligible for more state aid.

Petitioners appealed the Commissioner's April 1, 2024 FAD, arguing that:  our holding in Alcantara I gave the petitioners "special status," permitting an Abbott-style challenge to the constitutionality of the SFRA under the T&E clause of our state constitution.

II.

Our role in reviewing a final agency action is limited to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies—i.e. the law;
>
> (2) whether the record contains substantial evidence to support the agency's findings; and
>
> (3) whether the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

If the agency has satisfied these criteria, then "substantial deference" is owed, even if we would have reached a different result in the first instance. In re Herrmann, 192 N.J. 19, 28 (2007). Additionally, decisions "made by an administrative agency entrusted to apply and enforce a statutory scheme" are reviewed "under an enhanced deferential standard." E. Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022) (citing Hargrove v. Sleepy's, LLC, 220 N.J. 289, 301-02 (2015)). We recognize that "a reviewing court is 'in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue.'" Allstars Auto Grp., Inc., 234 N.J. at 158 (second alteration in original) (quoting Dep't of Children & Families, DYFS v. T.B., 207 N.J. 294, 302 (2011)).

III.

A.

Petitioners contend that our holding in Alcantara I "elevated [Lakewood's public school students] to a status previously accorded only students in Abbott districts." Put differently, petitioners argue that, because we concluded that Lakewood public school students suffer from an ongoing constitutional deprivation, Lakewood must now receive the unique

constitutional status of "wards of the State."  (citing <u>Abbott v. Burke</u> (<u>Abbott XXI</u>), 206 N.J. 332, 340(2011)).  This ward status, in turn, means "[t]he State has a special, heightened responsibility to Lakewood's students" as it did with the <u>Abbott</u> districts.  Petitioners insist that they have demonstrated a "clear nexus" between the undisputed denial of T&E to Lakewood public school students and the "flawed application of SFRA" to the District's finances.  They contend that this demonstrated nexus requires us to compel the other branches of government to "take all necessary and appropriate steps to remedy the constitutional deficiencies identified in this case . . . ."  This sought-after order, petitioners argue, should compel the respondents to take a series of immediate steps to right the District's finances, including, but not limited to: forgiveness of outstanding state loans; reimbursement of District monies spent to comply with certain unfunded DOE mandates; increases in the annual state aid payments; and passage of legislation designed to ensure Lakewood receives adequate education funding similar to the <u>Abbott</u> districts throughout the state.  We consider the argument.

Like <u>Abbott XXI</u>, petitioners here challenge the constitutionality of the SFRA as applied to a specific school district.  <u>See</u> <u>Abbott XXI</u>, 206 N.J. at 369.  However, the <u>Abbott XXI</u> petitioners argued that the SFRA was unconstitutionally applied to them because it was not fully funded by the

Legislature.  Ibid.  That is not the record we have before us.  Indeed, the vast record shows Lakewood has received all the SFRA funding that it has qualified for.  Instead, petitioners here argue that "[t]he State's failure to adjust SFRA based on the admittedly unique characteristics of [a school district's] student population and on 'up-to-date measure' of [a school district's] realistic 'ability to pay' is at the heart of the SFRA's unconstitutionality as applied to Lakewood."  Stated another way, petitioners do not argue that the SFRA is unconstitutional as applied to Lakewood because the Legislature underfunded it.  Petitioners posit that the statute is unconstitutional as applied to Lakewood because the fully funded SFRA doesn't account for how the District chooses to raise local revenue, allocate its budget or spend its money.  Petitioners, in effect, ask us to declare the SFRA unconstitutional because it doesn't yield enough state aid to cover the shortfalls caused by Lakewood's budget and spending choices, particularly in the areas of transportation and special education.  These choices, the record shows, have drained resources away from Lakewood's public school students, and are consistently at odds with cost-saving recommendations made by respondents.  This is a distinction with a difference, and we decline petitioners' invitation to apply the Abbott XXI analysis to this unique record.

We turn to the question of whether the Commissioner's April 1, 2024 FAD complied with the order which emerged from our holding in Alcantara I. In Alcantara I, we remanded to the Commissioner with instructions to determine whether the SFRA was unconstitutional as it applied to Lakewood. Alcantara I, 475 N.J. Super. at 71. The Commissioner answered the question in the negative, finding "Lakewood's failure to provide T&E to its students d[i]d not derive, in significant part, from the provisions of the SFRA." The Commissioner made numerous findings, which covered nearly every meaningful aspect of District governance, management, and operations. They included: Lakewood's decision not to increase its tax levy; its mismanagement of finances; and its ongoing failure to reduce or even competently manage transportation and special education costs. These findings are supported by the exhaustive record from Alcantara I and supplemented by the detailed 2024 CR, now before us.

We defer to an agency's well-supported factual findings. In re Herrmann, 192 N.J. at 28. Because respondents are entrusted to apply and enforce the SFRA, we review the Commissioner's FAD decision using an enhanced deferential standard. E. Bay Drywall, LLC, 251 N.J. at 493.

Applying our well-settled agency standard of review, we conclude that: neither the Commissioner's FAD, nor respondents' actions in attempting to

manage Lakewood's inability, or outright refusal, to take corrective action to remedy pervasive financial and operational deficits have violated state law or legislative policy; the record contains overwhelming evidence to support the Commissioner's findings; and the Commissioner's conclusion that the SFRA is not unconstitutional as applied to Lakewood is more than reasonable. This is because the ongoing constitutional deprivation suffered by the public school students of Lakewood is <u>not</u> due, in significant part, to the SFRA, given the facts carefully enumerated and analyzed in the CR and incorporated in the FAD. <u>Allstars Auto Grp., Inc.</u>, 234 N.J. at 157. It follows that we cannot conclude that the SFRA, as applied to Lakewood, is unconstitutional under <u>N.J. Const.</u> art. VIII, § 4, ¶ 1.

B.

That said, we are mindful that there are Lakewood school children who suffer from an ongoing constitutional deprivation. This stark truth, evident in the record, is undisputed by the parties. Indeed, it is petitioners' foundational claim, and respondents, charged with a constitutional obligation to ensure that all New Jersey school children receive a thorough and efficient education, do not disagree. While we conclude that Lakewood's failure to provide a thorough and efficient education for its public school students is not due, in

17

A-2493-23

significant part, to the SFRA, the search for an equitable, effective and efficient solution to the plight of these children must not end here.

The sweeping record compiled by the parties through the years reveals, in sharp relief, extant causes for this ongoing constitutional deprivation. The causes are well-documented, and quite frankly, hard to miss. The consistent pattern of neglect and misfeasance by various elected and appointed Lakewood school leaders with respect to critical governance, finance, curriculum, transportation and special education recommendations made by respondents over the years lends an aura of deliberate indifference to these proceedings.[4]

The record shows respondents understand the need to continue the search for remedies which will restore public school children's opportunity to obtain a thorough and efficient education in Lakewood. In respondents' merits brief, they identify available remedial options, including, "ensuring the District has sufficient funds to meet its immediate needs, moving to install a new State

---

[4] Deliberate indifference jurisprudence involves certain claims under the Eighth and Fourteenth Amendments. It refers to a state actor's conscious or reckless disregard of a substantial risk of serious harm to an individual. To establish deliberate indifference, a plaintiff must satisfy both an objective and a subjective prong: (1) the harm or risk must be objectively serious, and (2) the defendant must have subjective knowledge of the risk and disregard it. This standard requires more than mere negligence but less than intentional harm. We express no opinion on whether such a cause of action exists here. See L.W. ex rel. L.G. v. Toms River Reg'l Schs. Bd. of Educ., 381 N.J. Super. 465, 488 (App. Div. 2005); C.P. by J.P. v. Twp. of Piscataway Bd. of Educ., 293 N.J. Super. 421, 435 (App. Div. 1996).

monitor, and exploring the degree of oversight and intervention that may be necessary . . . ." This statement demonstrates that respondents, including the Commissioner, have a clear understanding of the tools at their disposal to ensure the District meets its obligation to protect, not continue to harm, the constitutional rights of petitioners and other Lakewood public school children. One of these tools is a constitutionally sufficient SFRA. For these reasons, we express measured optimism that respondents, and Lakewood, will navigate a timely path forward to guarantee and safeguard the right of all Lakewood schoolchildren to a thorough and efficient education.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division